IN THE COURT OF APPEALS
AT KNOXVILLE

| | | |
|---|---|---|
| FRANK TURK | ) | HAMBLEN COUNTY |
| | ) | 03A01-9811-CV-00381 |
| Plaintiff-Appellant | ) | |
| | ) | |
| | ) | |
| v. | ) | HON. JOHN K. WILSON, |
| | ) | JUDGE |
| | ) | |
| JOSEPH B. HOLDER, d/b/a | ) | |
| HOLDER TREE FARMS | ) | |
| | ) | |
| | | Defendant-Appellee ) |
| | | AFFIRMED AND REMANDED |

PAUL G. WHETSTONE OF MORRISTOWN FOR APPELLANT

MARK A. COWAN OF MORRISTOWN FOR APPELLEE

O P I N I O N

Goddard, P.J.

Plaintiff Frank Turk appeals dismissal of his suit against Joseph B. Holder, d/b/a Holder Tree Farms, because Mr. Holder, a resident of Oregon, had insufficient contact with the State of Tennessee to be amenable to service of process in

this State.

The case below was disposed of by granting Mr. Holder 's motion to dismiss, accompanied by his affidavit.  Mr. Turk filed a response to the motion, also supported by an affidavit.

The Trial Court held two hearings with regard to the motion, the first on June 30, 1998, and the second on October 7, 1998.  The transcript of the first hearing is not a part of the record and the second is principally arguments by counsel, plus several unsworn statements by Mr. Turk.

It appears that for the most part the facts necessary for disposition of this appeal are undisputed. Sometime prior to entering into a contract of purchase of Christmas trees from Mr. Holder, Mr. Turk received a business card from Mr. Holder in Arizona.  He initiated the sale by calling Mr. Holder in Oregon and received from Mr. Holder what is described as a proposed order, together with a price list of the trees to be sold.  Mr. Turk ultimately decided that the initial proposal, which was in the amount of $23,637.50, was more than he chose to buy and ultimately bought fewer trees at a price of $11,355.  Mr. Turk borrowed $10,000 incident to the purchase from a Tennessee bank and sent it to what he described as a "partner" in New Mexico.  The partner then added to that amount $1355 to purchase the trees which were, at Mr. Turk's direction, shipped to Arizona.  Upon inspection

Mr. Turk found the trees to be defective and thereafter brought the suit presently on appeal.

It has been held that T.C.A. 20-2-214(a)(6) extends the personal jurisdiction of Tennessee courts to the limits allowed by the United States Constitution.[1] In Gullett v. Qantas Airways, Ltd., 417 F.Supp. 490 (M.D.Tenn.1975), the Court ruled (at page 493):

The language of the statute is clear. There is no mention of any "within the state" limitation in subsection (f) [now subsection (6)], and one can only assume that it was the intent of the legislature not to include such a restriction in that subsection.

. . . .

[T]he clear language of the statute, its legislative history, . . . convince this court that subsection (f) expands the jurisdiction of Tennessee courts . . . to the full constitutionally permissible limits.

This was reiterated by the Supreme Court of Tennessee in the case of Masada Investment Corp. v. Allen, 697 S.W.2d 332 (Tenn.1985), in which the Court declared (at page 334):

Subsection (6) changed the long-arm statute from a "single act" statute to a "minimum contacts" statute which expanded the jurisdiction of Tennessee courts to the full limit allowed by due process.

Due process requires that a non-resident defendant have a certain "minimum contacts" with the forum such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154 (1945). In the case of Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174 (1985), the Court stated that where a forum seeks to assert "specific" jurisdiction over a non-resident, the requirement that a defendant have "fair warning" that a particular activity might subject him to jurisdiction in the forum is satisfied if the defendant has "purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to" those activities. In sum, "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another State' are subject to regulations and sanctions in the other state for the consequences of their activities." Burger King, supra, citing Travelers Health Ass'n v. Commonwealth of Virginia, 339 U.S. 643, 70 S.Ct. 927 (1950).

This Court, in Shelby Mut. Ins. Co. v. Moore, 645 S.W.2d 242 (Tenn. Ct. App. 1981), noted that three primary factors are to be considered in determining whether the requisite minimum contacts were present: the quantity of the contacts, their nature and quality, and the source and connection of the cause of action with those contacts. Two lesser factors to be considered are the interest of the forum

state and convenience. The Tennessee Supreme Court adopted these factors in <u>Masada Investment Corp. v. Allen</u>, supra.

In this case we are of the opinion that Mr. Holder's contacts with Tennessee did not meet the minimum contacts constitutionally required and that the Trial Court properly refused to exercise jurisdiction. We say this because, as already noted, any solicitation by Mr. Holder was made in the State of Arizona and the contact involving Tennessee was made by Mr. Turk. In response to Mr. Turk's request, Mr. Holder did send invoices and a price list to Mr. Turk, but the checks[2] in payment were sent from New Mexico and the trees delivered to Arizona.

In reaching our conclusion we recognize that it is for the most part, if not entirely, a subjective judgment, but is one in which we are called upon to make and we believe is appropriately made under the facts of this case.

For the foregoing reasons the judgment of the Trial Court is affirmed and the cause remanded for collection of costs below. Costs of appeal are adjudged against Mr. Turk and his surety.

_____
Houston M. Goddard, P.J.

CONCUR:

_____
Charles D. Susano, Jr., J.


_____
D. Michael Swiney, J.